UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALLEN LEE SADDLER, etc.,

    Plaintiff,

v.                                        Case No. 3:07-cv-1215-J-HTS

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

    Defendant.

**OPINION AND ORDER**[1]

**I.  Status**

Allen Lee Saddler is appealing the Social Security Administration's denial of his claims for Disability Insurance Benefits and Supplemental Security Income. His alleged inability to work is based on tendonitis and arthritis. Transcript of Administrative Proceedings (Tr.) at 77. Plaintiff was ultimately found not disabled by Administrative Law Judge (ALJ) John D. Thompson, Jr., in the Decision entered on March 27, 2007. *Id.* at 16, 26. Claimant has exhausted the available administrative remedies and the case is properly before the Court. On appeal, he asserts the ALJ improperly rejected the opinion of a treating

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. Notice, Consent, and Order of Reference-Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #14).

physician and ignored other evidence of record. *See* Memorandum in Support of Complaint (Doc. #15; Memorandum) at 6-10.

## II.  Legal Standard

This Court reviews the Commissioner's final decision as to disability[2] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if supported by substantial evidence[.]" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (internal quotation marks omitted); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Ingram*, 496 F.3d at 1260. Despite the existence of support in the record, the ALJ's determination may not be insulated from remand where there is a "failure to apply the correct law or to provide the reviewing court

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy. *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

with sufficient reasoning for determining that the proper legal analysis has been conducted[.]" *Ingram*, 496 F.3d at 1260 (internal quotation marks omitted); *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III. Discussion

Claimant argues the ALJ "improperly rejected the opinion of Dr. [Allain A.] Girouard[.]"  Memorandum at 6 (emphasis and capitalization omitted).  Dr. Girouard is one of his treating physicians.  *See*, *e.g.*, Tr. at 184-190.

Unless rejected for good cause, a treating physician's opinion "is entitled to substantial weight[.]" *Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 850 (11th Cir. 2006) (per curiam) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Further, the weight afforded a treating doctor's opinion must be specified along with "any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also Phillips*, 357 F.3d at 1241 ("When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons.").

"The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards*, 937 F.2d at 583; *see also Ogranaja*, 186 F. App'x at 850; *Phillips*, 357 F.3d at 1240-41.  ALJs, however, may

not simply substitute their own judgment for that of a medical expert. *See Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (per curiam). It has sometimes even been stated that, "[w]here the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, . . . as a matter of law . . . he has accepted it as true." *MacGregor*, 786 F.2d at 1053.

The ALJ provided a fairly lengthy critique of Dr. Girouard's opinions, rejecting the Physical Capacities Evaluation completed by this physician, *see* Tr. at 146-49, for numerous reasons. *See id.* at 21-22. The judge stated "there is no objective evidence of any lower back problems[,]" *id.* at 21, nor of trouble with his lower extremities. *Id.* at 22. He cited "[i]nconsistencies in [Dr. Girouard's opinions as to] the residual functional capacity[, f]or example, the opinion that [Claimant] could frequently stoop[ and] crouch but could only stand less than 2 hours." *Id.* at 21. That Mr. Saddler "has not had virtually any medical treatment since mid-2005" was also highlighted, *id.*, along with the observation "[i]t does not appear that the claimant is routinely taking prescription pain medication prescribed by Dr. Girouard, although he may have taken some in the past." *Id.* at 22. Further, "[w]hile the record shows that he clearly had some degenerative joint disease in his cervical spine . . ., Dr. [Bruce] Witkind . . . reviewed all the records and MRI evidence and . . . found no evidence of any significant neurological impairments[.]" *Id.* at 21-22. Moreover,

he believed "that a person with the claimant's impairments might be limited to no overhead work and no overhead lifting and lifting no more than 20-30 pounds; otherwise, a person would be able to function in the light to medium work range." *Id.* at 22.  The judge pointed out Dr. Girouard's progress notes demonstrated shoulder improvement and suggested Plaintiff's daily activities and reports that he was feeling better were inconsistent with at least some of the alleged limitations.  *See id.* at 22.  Additionally, "[t]here are no objective findings to support any real limitation on this claimant's ability to sit, stand or walk[.]"  *Id.*  "Likewise, there is no reason offered why this claimant would need to lie down during a normal work day."  *Id.*[3]

Claimant maintains "[t]here is adequate evidence in the notes and records from Dr. Girouard that clearly indicate and document the severe medical problems[--]specifically[,] the pain in the hands that is well documented in the records."  Memorandum at 7.  These generic statements, unaccompanied by citation or further explanation, are insufficient to reveal error.  Likewise, the fact Plaintiff was diagnosed with stenosis, *see id.* at 8, is not controlling.  Perhaps underlying the Memorandum's argument is an assumption the ALJ found that "[P]laintiff is pain free."  *Id.* at 9.  However, it seems the judge may have accepted the presence of

---

[3] Obviously, although he did not spell out every perceived deficiency, the judge did more than "[s]imply . . . make a broad statement that the opinions of the treating physician are rejected because the opinions are inconsistent[,]" as Claimant at one point contends.  Memorandum at 8.

some degree of pain, although he concluded "the objective medical evidence does not support the *severity* of pain and other subjective symptoms alleged[.]"  Tr. at 22-23 (emphasis added); *see also id.* at 25 ("[T]he claimant's allegations . . . are not *totally* credible.") (emphasis added).  On the other hand, the ALJ never affirmatively acknowledged pain or described functional limitations as being related thereto.  Moreover, he wrote that "none of the claimant's conditions are of the severity that they could reasonably be expected to give rise to the claimant's alleged pain and other symptoms."  *Id.* at 23.  As this case is due to be remanded on other grounds, *see infra*, the ALJ will be requested to clarify his application of the pain standard.

    Mr. Saddler takes issue with the ALJ's mention that, according to Dr. Witkind, he "had no serious neurological impairment[,]" as the problem from which he "suffers . . . is not a neurological difficulty but pain due to arthritis[.]"  Memorandum at 7.  While there might be some merit in this observation if viewed out of context, the judge did not focus exclusively on Dr. Witkind's neurological conclusions.  *See* Tr. at 22.  To the contrary, it is apparent this nonexamining expert rendered his opinions not merely on the basis of neural findings but in view of "the totality of the evidence and [his] review of the file[.]"  *Id.* at 282; *cf. id.* at 22 ("Dr. Witkind . . . reviewed all the records and MRI evidence and noted the findings regarding the same.").  This review included

consideration of assertions involving arthritis. *See*, *e.g.*, *id.* at 277; *cf. id.* at 284 (exchange with Claimant's representative regarding arthritis).

As to the judge's assertion an ability to "frequently stoop and crouch" conflicts with a capacity to "stand less than two hours" during a workday, Plaintiff contends "[i]t is unclear how those statements are inconsistent." Memorandum at 8. The ALJ indeed branded these opinions inconsistent, and unfortunately this is the sole "example" provided of the alleged "[i]nconsistencies in [Dr. Girouard's opinions concerning] the residual functional capacity [that] rendered it unacceptable." Tr. at 21. The Commissioner fails to address this attack. To a layperson, it may indeed seem odd that an individual could stoop or crouch frequently, yet be able to stand and/or walk for less than two hours. Still, neither the Court nor presumably the ALJ has the expertise to declare this to be medically implausible such that it is inherently contradictory. Hence, the judge will be instructed to reevaluate the opinions of Dr. Girouard.

**B. Evidence Ignored**

Plaintiff next complains the ALJ "made no mention of either [his] treating physician, Dr. [Dudley] Baringer, or the pain management doctor, Dr. [Elena] Stanescu." Memorandum at 9.

"Although [an] ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision . . . ." *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001). Rather, the judge "must explain why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) (internal quotation marks omitted); *see also Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007).

According to Mr. Saddler, the judge "makes no mention at all of [his] primary treating physician - Dr. Baringer - who first indicated that [he] was having numbness and pain in the arms and hands and eventually referred [him] to the first specialist." Memorandum at 10. The records from this doctor are said to "provide support for the ongoing nature of the plaintiff's problems[,]" including pain. *Id.* Defendant's only response is that Claimant "fail[s] to note that the ALJ referred to Dr. Baringer's reports in the body of his decision (Tr. 18)." Memorandum in Support of the Commissioner's Decision (Doc. #16; Opposition) at 5.

The judge's summary of medical evidence, while it omits any mention of Dr. Baringer, recites certain aspects of the records from this doctor. *See* Tr. at 18. Of course, to the extent this information is significant and probative (which the Commissioner does not dispute), the important issue is whether the ALJ

- 8 -

considered it in his analysis.  Since there is no clear indication he did so, on remand he will be asked to discuss the evidence.

Concerning documentation from the pain management physician, Plaintiff acknowledges the ALJ "did indicate that [he] saw 'pain management' in 2005," but argues "this was an incomplete analysis of these medical records."  Memorandum at 9.  In particular, he notes "[t]he pain management doctor attempted injections in April and May 2005 that were not successful[ as] the pain had returned by June 2005."  *Id.; cf.* Tr. at 159-61, 163-68.  Likewise, the judge's "indicat[ion] that there was some decrease in the pain complaints" fails to account for "when that decrease occurred and over what period of time; it appears that the pain relief lasted slightly over one month[,] a relatively short period[.]"  Memorandum at 10.

Somewhat surprisingly, the Commissioner's only defense to these observations is his unpersuasive claim "Plaintiff's argument is internally inconsistent and self-contradictory[.]"  Opposition at 5.  Defendant urges the Court to read Claimant's brief as "contend[ing] that the ALJ did not address *records* from pain management specialist Dr. Stanescu."  *Id.* (emphasis added).  In actuality, Plaintiff asserted the judge made no mention of the doctor herself.  *See* Memorandum at 9.  Given that these arguments appear to rest on a sound basis, and are unopposed by the

- 9 -

Commissioner, on remand the ALJ should be sure to thoroughly review the evidence from Dr. Stanescu and The Physicians Pain Center.

### IV. Conclusion

In accordance with the foregoing, the Clerk of the Court is directed to enter a judgment pursuant to sentence four of 42 U.S.C. § 405(g), and as incorporated by 42 U.S.C. § 1383(c)(3), **REVERSING** the Commissioner's decision with instructions to 1) clarify application of the pain standard; 2) reevaluate the opinions of Dr. Girouard; 3) discuss the evidence from Dr. Baringer; 4) thoroughly review the documentation from Dr. Stanescu and The Physicians Pain Center; and 5) conduct any further proceedings deemed appropriate. If benefits are ultimately awarded, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past-due benefits to seek the Court's approval of attorney's fees under the Social Security Act.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of July, 2008.

/s/    Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
    and pro se parties, if any